# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION



| | |
|---|---|
| FRANK RICHTER, et al., ) | |
| ) | |
| Plaintiffs, ) | Case No. 03 C 3793 |
| ) | |
| v. ) | Magistrate Judge |
| ) | Martin C. Ashman |
| VILLAGE OF OAK BROOK, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Frank H. Richter, Mark C. Bahsen, Clifford A. Ekkert, Robert V. Robertson, Thomas Stanfa, and Theodore W. Vassios, filed a three-count complaint against Defendant, the Village of Oak Brook, Illinois, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (hereinafter "FLSA").[1] Defendant now moves this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, to enter a summary disposition of Plaintiffs' claims in its favor. Plaintiffs oppose Defendant's motion and file a cross-motion for summary judgement. The parties have consented to have this Court conduct any and all proceedings in this case, including the entry of final judgment. *See* 28 U.S.C. § 636(c); Local R. 73.1(a). For the reasons that follow, Defendant's motion is granted and Plaintiffs' motion is denied.

---

[1] While Plaintiffs filed claims against several parties at the outset of this case, Defendant is the only remaining defendant. Thomas J. McEllin, Gary Clark, Kevin Fleege, and Glen Washington were originally plaintiffs in this suit but dropped their claims against Defendant before the present motions were filed.

I. **Background**

The following facts are undisputed and are taken from Plaintiffs' and Defendants' Local Rule 56.1(a) & (b) statements of uncontested material facts and accompanying exhibits. Under Local Rule 56.1(b)(3), the nonmovant's response to movant's statement of material facts must include, "in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon," and "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Although Plaintiffs deny several paragraphs of Defendant's Local Rule 56.1(a) Statement, Plaintiffs do not offer proper explanations or support for their denials. The Court need not search through the record to find evidence supporting Plaintiffs claims, *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 923-24 (7th Cir. 1994), and deems these statements admitted for purposes of deciding this motion for summary judgment.[2]

---

[2] Defendant's Local Rule 56.1(a) Statement is based almost exclusively on an affidavit from Michael A. Crotty, Defendant's Assistant Village Manager from November 1995 through May 2002. Plaintiffs did not file a motion to strike portions of Mr. Crotty's affidavit but claim in their brief that "Mr. Crotty's statements in his affidavit, insofar as they concern matters that occurred prior to his tenure, are hearsay and inadmissible." (Pls.' Br. at 8.) Despite Plaintiffs' general hearsay objection, however, Plaintiffs explicitly admit most of the facts set out in Defendant's Local Rule 56.1(a) Statement. In fact, of the paragraphs Plaintiffs attempt to deny, only paragraph 6 of Defendant's Local Rule 56.1(a) Statement is based on Mr. Crotty's affidavit and concerns matters that occurred prior to November 1995. Paragraph 6 reads: "The Village's [1987] plan was prepared in direct consultation with, and with ultimate approval from, Daniel New, the Regional Director of the Wage and Hour Division of the Department of Labor's Chicago office." Plaintiffs response to paragraph 6 reads, "DENY in that the 'ultimate approval' never occurred as the Village never submitted its plan in writing as directed." (Pls.' Resp. Def.'s L.R. 56.1 ¶ 6.)

Local Rule 56.1(a) statements of fact may be supported by affidavits, so long as the affidavits are made on personal knowledge and not mere speculation. Fed. R. Civ. P. 56(e). Personal knowledge may include reasonable inferences but those inferences must be grounded in
(continued...)

Defendant is an Illinois municipal corporation located in DuPage County, Illinois. In addition to operating and maintaining a fire department, the Defendant also created a separate entity—staffed by fire department employees working outside of their regular working hours—the Fire Protection Bureau. (Def.'s L.R. 56.1 ¶ 3.) Plaintiffs are all present or former employees of Defendant's Fire Department, employed in the capacity of firefighters. In addition, at one time or another each Plaintiff also served Defendant as a fire inspector, working in the Defendant's Fire Protection Bureau. (Def.'s L.R. 56.1 ¶ 1.)

In 1987, subsequent to the overtime provisions of the FLSA having been deemed applicable to units of local government such as Defendant, Defendant retained legal counsel to assist in the creation of a plan for compensation of employees of its Fire Protection Bureau which complied with the Act. Specifically, Defendant sought to create an agreement under Section 207(g)(2) of the FLSA ("Section 7(g)(2)") that would set out an overtime compensation plan for employees working two kinds of work for which different hourly rates have been established. Ultimately, Defendant's plan was prepared in direct consultation with the Regional Director of the Wage and Hour Division of the Department of Labor's Chicago office, (Def.'s L.R. 56.1 ¶ 6),

---

[2](...continued)
observation or other first-hand personal experience. *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th. Cir. 1998). Defendant does not cite to documents or records in its possession that would support Mr. Crotty's statement in paragraph 6, nor does Defendant explain how Mr. Crotty obtained detailed personal knowledge of the drafting and approval history of a compensation plan enacted eight years before he became Assistant Village Manager. Thus, while Plaintiffs' attempt to deny paragraph 6 does not comply with the local rules of this district, the Court nonetheless finds merit in Plaintiffs' argument and strikes the words "and with ultimate approval from" from paragraph 6. The remainder of Defendant's Local Rule 56.1(a) Statement is deemed admitted.

and provided that work performed by part-time Fire Department personnel working in the Fire Protection Bureau, outside of their regular working hours, would be paid at one and a half times a straight time rate set in connection with the practices of a number of comparable jurisdictions. (Pls.' Resp. Def.'s L.R. 56.1 ¶ 7.) Defendant's Fire Department employees who worked in the Fire Protection Bureau, including two of the Plaintiffs in this litigation, signed off on the plan.

From 1997 through 1999, the firefighters who worked for Defendant attempted to unionize and certified with the International Brotherhood of Teamsters, Local 714, in August 1999. (Pls.' L.R. 56.1 ¶ 8.) After the firefighters certified with the International Brotherhood of Teamsters, Plaintiffs Richter and Stanfa filed multiple complaints and grievances against Defendant. (Pls.' L.R. 56.1 ¶11; Def.'s Resp. Pls.' L.R. 56.1 ¶ 11.) Among other things, Plaintiffs Richter and Stanfa claimed that Defendant retaliated against the firefighters for unionizing by changing the method of payment made to firefighters who also worked as fire inspectors. (Pls.' L.R. 56.1 ¶¶ 9-10.) Plaintiffs' various complaints and grievances regarding overtime pay were not successful. (Pls.' L.R. 56.1 ¶ 11; Def.'s Resp. Pls.' L.R. 56.1 ¶ 11.)

In 2002, Plaintiff Richter filed a complaint with the United States Department of Labor, alleging that Defendant failed to pay overtime wages in accordance with the FLSA and an investigation followed. Throughout the investigation, Defendant was represented by Edward W. Bergmann of the law firm Seyfarth Shaw. The Department of Labor's lead investigator, at least in April 2004, was Judith Meek. (Pls.' L.R. 56.1 ¶ 12.) The investigation revealed, among other things, that firefighters who worked in two different jobs were paid at two different rates of pay, a firefighter rate and a fire inspector rate. (Pls.' L.R. 56.1 ¶ 13.) As a result of discussions between counsel for Defendant and representatives from the Department of Labor, it was agreed

that—for purposes of clarification only—a new compensation agreement would be executed by Fire Department employees serving inspection duties for the Fire Protection Bureau. (Pls.' Resp. Def.'s L.R. 56.1 ¶ 11.) Plaintiffs Bahsen, Ekkert, Robertson, Stanfa, and Vassios signed off on this plan on December 3, 2002, and Plaintiff Richter signed off on January 13, 2003 (collectively, the "2003 Section 7(g)(2) Agreements"). (Pls.' L.R. 56.1 ¶ 16.)

On June 3, 2003, Plaintiffs filed a three-count complaint against Defendant alleging violations of the FLSA. In their complaint, Plaintiffs claim that, prior to signing the 2003 Section 7(g)(2) Agreements, per the FLSA, they were entitled to one and one-half their normal firefighter pay rate whenever they worked overtime, regardless of whether they were performing firefighter or fire inspector work. Plaintiffs claim that Defendant complied with this arrangement until 1999 but violated the agreement from 1999 until December 2002 by compensating Plaintiffs for their overtime work at one and one-half times a straight time rate that was less than the firefighter rate. Plaintiffs now seek liquidated damages equal to the amount of all unpaid overtime compensation (i.e., the total number of overtime hours Plaintiffs worked times the difference between one and one-half Plaintiffs' firefighter rate and one and one-half the straight time rate used by Defendant), reasonable attorneys' fees and costs, and additional relief as the Court deems appropriate. (Pls.' Complaint at 5-7.) On November 21, 2005, Defendant moved for summary judgment on all of Plaintiffs' claims, arguing that (1) firefighter and fire inspector were always two different kinds of work, (2) Plaintiffs work as fire inspectors was always treated as overtime and compensated at time and a half a straight time rate, and (3) the parties agreed to all of these terms prior to any work being performed. (Def.'s Mot. Summ. J. at 6-9.) Plaintiffs filed their cross-motion for summary judgment on December 19, 2005.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Sinkler v. Midwest Prop. Mgmt. Ltd.*, 209 F.3d 678, 683 (7th Cir. 2000). In determining whether summary judgment is appropriate, the Court must view the evidence, and draw all reasonable inferences therefrom, in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir. 1992). However, if the non-movant bears the burden of proof on an issue he or she may not simply rest on the pleadings, but rather must affirmatively set forth specific facts establishing the existence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 322-26.

Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. If taking the record in its entirety cannot lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial and summary judgment must be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. FLSA Requirements and Exemptions

Plaintiffs allege violations of the FLSA. The FLSA requires employers to pay overtime to employees who work more than forty hours in a workweek at a rate "not less than one and

one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Congress provided the "fire protection" industry with a partial exemption to the standard forty-hour workweek, however, such that the threshold triggering the obligation to pay overtime to employees engaged in "fire protection" activities is based on a ratio of 212 hours to every twenty-eight consecutive working days. 29 U.S.C. § 207(k); 29 C.F.R. § 553.230. Section 7(g)(2) of the FLSA also provides that:

> No employer shall be deemed to have violated subsection (a) of this section by employing any employee for a workweek in excess of the maximum workweek applicable to such employee under such subsection if, pursuant to an agreement or understanding arrived at between the employer and the employee before performance of the work, the amount paid to the employee for the number of hours worked by him in such workweek in excess of the maximum workweek applicable to such employee under such subsection–
>
> * * *
>
> (2) in the case of an employee performing two or more kinds of work for which different hourly or piece rates have been established, is computed at rates not less than one and one-half times such bona fide rates applicable to the same work when performed during nonovertime hours . . . .

29 U.S.C. § 207(g)(2). Thus, Defendant must satisfy the following requirements to qualify for Section 7(g)(2)'s exemption: (1) Plaintiffs must have performed two or more kinds of work; (2) Defendant must establish a bona fide hourly rate for those different kinds of work; (3) Plaintiffs' compensation must be paid pursuant to an agreement or understanding arrived at between Defendant and Plaintiffs in advance of the performance of work; and (4) Plaintiffs' compensation must be computed at rates not less than one and one-half times such rates applicable to the same work when performed during nonovertime hours. Id.; 29 C.F.R.

§ 778.419. *See also Mathias v. Addison Fire Prot. Dist. No. 1*, 43 F. Supp. 2d 916, 920-21 (N.D. Ill. 1999).

### 1. Plaintiffs performed two or more kinds of work.

Plaintiffs first argue that, from 1999 until December 2002, Defendant did not qualify for the Section 7(g)(2) exemption and was required to pay Plaintiffs one and one-half their firefighter rate for all overtime work because, at that time, firefighter work and fire inspector work did not constitute two or more kinds of work. To support this argument, Plaintiffs cite to (1) the Department of Labor's definition of a fire protection employee, which includes both firefighters and fire inspectors, 29 C.F.R. § 553.210(a), and (2) Defendant's posted job description for "Firefighter/Paramedic," which includes fire prevention and company fire inspection duties. (Pls.' Mot. Summ. J. at 6.) Defendant disagrees and claims that, based on the undisputed facts of this case and the court's findings in *Mathias v. Addison Fire Prot. Dist. No. 1*, firefighter and fire inspector constitute two different kinds of work. (Def.'s Mot. Summ. J. at 6.)

Plaintiffs' arguments cannot prevail, as Plaintiffs conceded this issue in their response to Defendant's Local Rule 56.1(a) Statement and at oral argument. First, Plaintiffs explicitly admit that the 2003 Section 7(g)(2) Agreements were executed "for purposes of clarification only." (Pls.' Resp. Def.'s L.R. 56.1 ¶ 11.) Because the 2003 Section 7(g)(2) Agreements treat firefighter and fire inspector as two different kinds of work, it follows that the parties had previously acknowledged this difference and were merely memorializing that understanding in the 2003 Section 7(g)(2) Agreements. Next, at oral argument, Plaintiffs conceded that (1) whether Defendant's firefighters and fire inspectors perform two different kinds of work depends on the

actual facts of this case, i.e., the actual work performed, and not on standard definitions set out by the Department of Labor or Defendant, (2) when Plaintiffs agreed to the 2003 Section 7(g)(2) Agreements they considered Defendant's firefighters and fire inspectors to be two different kinds of work, and (3) the responsibilities and duties of Defendant's firefighters and fire inspectors did not change from 1999 to 2003. (Oral Argument, February 17, 2003.) In light of Plaintiffs' concessions, the Court suggested that it would be inconsistent of Plaintiffs to argue that Defendant's firefighters and fire inspectors performed the same kind of work prior to the 2003 Section 7(g)(2) Agreements but different kinds of work afterward. (Id.) The Court then asked Plaintiffs, "Did something change as to the jobs themselves" after the 2003 Section 7(g)(2) Agreements were signed? (Id.) Plaintiffs answered, "No." (Id.) As Plaintiffs concede that, at all relevant times in this case, firefighter and fire inspector constituted two different kinds of work, the Court finds that the first requirement under the Section 7(g)(2) exemption is met.

### 2. The parties reached an agreement or understanding in advance of the performance of work.

The parties drafted a compensation plan in 1987, (Pls.' L.R. 56.1, Ex. 2, p. 100), but ascribe different meanings to the plan in their briefs and arguments. Defendant cites to the 1987 compensation plan and claims that the parties reached an agreement in advance of the performance of work, as required under the Section 7(g)(2) exemption. Defendant points out, and Plaintiffs are deemed to have admitted in their Response to Defendant's Local Rule 56.1(a) Statement, that the 1987 agreement was prepared in consultation with the Regional Director of the Wage and Hour Division of the Department of Labor's Chicago office, (Pls.' Resp. Def.'s

L.R. 56.1 ¶ 6), set out a bona fide pay rate for the different kinds of work Plaintiffs would perform, (Pls.' Resp. Def.'s L.R. 56.1 ¶ 7), and was signed and executed by two of the Plaintiffs in 1987. (Pls.' Resp. Def.'s L.R. 56.1 ¶ 8; Def.'s L.R. 56.1, Ex. 2.) Plaintiffs argue that, contrary to Defendant's claim, (1) under the 1987 agreement, firefighter work and fire inspector work were not treated as two different kinds of work, (2) Defendant began violating the 1987 agreement in 1999 when it changed its method for calculating Plaintiffs' overtime compensation, and (3) Defendant admitted to the Department of Labor that, beginning in 1999, its compensation plan was in violation of the FLSA.

Plaintiffs' arguments fail. As an initial matter, the Court finds that Defendant did not admit that its compensation plan violated the FLSA, nor did the Department of Labor make such a finding. Plaintiffs cite to Department of Labor notes taken during the 2002 investigation that read, "[Defendant's counsel] has assured [Defendant] will be in compliance in the future, although [Defendant] refuses to pay backwages." (Pls.' L.R. 56.1, Ex. 2, p. 6.) This statement does not constitute an admission of noncompliance and the notes themselves are neither an official finding by the Department of Labor nor binding on this Court.[3] Furthermore, Plaintiffs are deemed to have admitted that Defendant has never been notified by the Department of Labor—or any other regulatory agency or division of the government—that its compensation plan with respect to the Fire Protection Bureau was in some manner violative of the FLSA.

---

[3] Additionally, the author of these notes has not been established. At oral argument, Plaintiffs claimed that Judith Meek of the Depart of Labor recorded these notes. While Meek was the Department of Labor's lead investigator in April 2004, (Pls.' L.R. 56.1 ¶ 12), Plaintiffs did not submit any evidence that Meek was the lead investigator throughout this investigation, nor that Meek is the author of the Department of Labor notes in question.

(Pls.' Resp. Def.'s L.R. 56.1 ¶ 12.) And Plaintiffs explicitly admit that, when Defendant discussed its compensation plan with the Department of Labor, "it was agreed that—for purposes of clarification only—a new 7 (g)(2) agreement would be executed . . . ." (Pls.' Resp. Def.'s L.R. 56.1 ¶ 11.) Thus, Plaintiffs present no evidence that Defendant's compensation plan was rejected by the Department of Labor, nor that it fell short of the FLSA's requirements.

Next, Plaintiffs argue that the plain text of the 1987 agreement supports their claim that the parties did not consider firefighter work and fire inspector work to be two different kinds of work. The agreement reads:

> [Plaintiffs] believe that calculation of our hourly salary based upon the 212 hours per 28 day cycle to be in compliance with the Fair Standards Act. We also feel that calculation of our Bureau salary at the rate on [sic] one and one-half times this rate to be a fair and equitable rate of pay.

(Pls.' L.R. 56.1, Ex. 2, p. 100.) Plaintiffs claim that the term "Bureau" means "Fire Department," (Pls.' L.R. 56.1 ¶ 3), "this rate" refers to the normal firefighter rate, and that, per the 1987 agreement, the parties expected Plaintiffs' work as fire inspectors to count toward their 212 hours per twenty-eight day cycle and all work performed after 212 hours to be calculated and compensated at one and a half times the normal firefighter rate. Defendant argues that the term "this rate" refers to the straight time hourly rate for fire inspector services, i.e., the "Bureau salary," and that this document constitutes an agreement to perform fire inspector work for one and one-half the straight time hourly rate.

Plaintiffs admissions contradict their proposed definitions of "Bureau" and "this rate." First, Plaintiffs' claim that the word "Bureau" is synonymous with "Fire Department" contradicts Plaintiffs' deemed admissions in their response to paragraph 3 of Defendant's Local Rule 56.1(a)

- 11 -

Statement (describing the Fire Protection Bureau as "a separate entity—staffed by fire department employees working outside of their regular working hours"), (Pls.' Resp. Def.'s L.R. 56.1 ¶ 3), and is denied by Defendant (which supports its claim with the Crotty Affidavit and evidence from Defendant's website). (Def.'s L.R. 56.1 ¶ 3; Def.'s Resp. Pls.' L.R. 56.1 ¶ 5.) Because Plaintiffs are deemed to have admitted that the "Bureau" is separate and distinct from the "Fire Department," the Court rejects Plaintiffs interpretation of the word "Bureau." Next, Plaintiffs definition of "this rate" fails, as Plaintiffs explicitly admit that under the 1987 agreement "work performed by part-time Fire Department personnel working in the Bureau, outside of their regular working hours, would be paid at one and a half times a straight time rate set in connection with the practices of a number of comparable jurisdictions." (Pls.' Resp. Def.'s L.R. 56.1 ¶ 7.)[4]

Finally, the evidence submitted to the Court does not support Plaintiffs claims that, beginning in 1999, Defendant changed its method for calculating overtime pay for firefighters who also worked as fire inspectors. As an initial matter, due to their improper denial of paragraph 9 of Defendant's Local Rule 56.1(a) Statement, Plaintiffs are deemed to have admitted

---

[4] Other evidence submitted by Plaintiffs undermines Plaintiffs' claim that "this rate" meant the normal firefighter pay rate and supports Defendant's claim of a straight time rate being used continuously since 1987. Specifically, the Department of Labor's 2002 investigation contains documents prepared by Defendant's counsel in 2000 listing the straight time fire inspector pay rates. (Pls.' L.R. 56.1, Ex. 2, p. 96.) These rates slowly increase from 1987 until 2000, at which point they reach a top range of $13.56 to 18.30. (Pls.' L.R. 56.1, Ex. 2, p. 95.) This pay rate is consistent with fire inspector rates listed in Plaintiffs' damage calculation, which range from about $16.49 to 21.62 in 2001. (Pls.' L.R. 56.1, Ex. 5.) While neither party concedes the veracity of the other side's figures, this evidence does support the claim that a slowly increasing straight time rate for fire inspection work was being used and lends support to Defendant's interpretation of the term "this rate" in the 1987 agreement. This evidence also suggests that there were no changes in payment methods over the years.

that "[Defendant's] plan for compensation of Bureau employees—one and one-half times a straight time rate—has remained unchanged, except that the straight time rate has been increased by [Defendant] over time using the consumer price index." (Pls.' Resp. Def.'s L.R. 56.1 ¶ 9.) Next, the only evidence Plaintiffs offer to show that Defendant changed its method of payment is Plaintiff Stanfa's affidavit statement to that effect. (Pls.' L.R. 56.1 ¶ 9.) Plaintiffs do not present any hard evidence, such as pay stubs or tax documents demonstrating a change in compensation methods. Given that Plaintiffs admit there were no changes in payment methods, and given that a straight time rate was in place—and that Plaintiffs' own numbers suggest it was complied with—Stanfa's unsupported allegation is insufficient to create a genuine issue of material fact.

Based on the above, the Court concludes that the parties reached an agreement in advance of the performance of work, as required by Section 7(g)(2) of the FLSA.

### 3. Defendant established a bona fide hourly rate for different kinds of work.

In order to qualify for the Section 7(g)(2) exemption Defendant must establish a bona fide hourly rate for the different kinds of work Plaintiffs performed. In their response to Defendant's Local Rule 56.1(a) Statement, the Plaintiffs admit that, in 1987, Defendant created a plan for compensation for firefighters under which work performed by part-time Fire Department personnel working in the Bureau, outside of their regular working hours, would be paid at one and a half times a straight time rate set in connection with the practices of a number of comparable jurisdictions. (Pls.' Resp. Def.'s L.R. 56.1 ¶ 7.) As discussed above, additional

evidence in the form of letters to the Department of Labor discussing this straight time rate has been submitted to the Court. Because a straight hourly rate of pay for fire inspector work set in connection with the practices of comparable jurisdictions constitutes a bona fide hourly rate in the Northern District of Illinois, *see Mathias*, 43 F. Supp. 2d at 925, Defendant satisfies this requirement under Section 7(g)(2).

4. Plaintiffs' compensation was computed at rates not less than one and one-half times such rates applicable to the same work when performed during nonovertime hours.

To qualify for the Section 7(g)(2) exemption, Plaintiffs' compensation must be computed at rates not less than one and one-half times such rates applicable to the same work when performed during nonovertime hours. Plaintiffs explicitly admit that, under the 1987 plan, work performed by part-time Fire Department personnel working in the Bureau, outside of their regular working hours, would be paid at one and one-half times a straight time rate set in connection with the practices of a number of comparable jurisdictions. (Pls.' Resp. Def.'s L.R. 56.1 ¶ 7.) Furthermore, as stated above, due to Plaintiffs' improper denial of paragraph 9 of Defendant's Local Rule 56.1(a) Statement, Plaintiffs are deemed to have admitted that Defendant's plan for compensation of Bureau employees has remained unchanged, except that the straight time rate has been increased by Defendant over time using the consumer price index. (Pls.' Resp. Def.'s L.R. 56.1 ¶ 9.) Thus, Plaintiffs' compensation met the fourth requirement set out in Section 7(g)(2).

### III. Conclusion

For the reasons stated above, Defendant's motion is granted and Plaintiffs' motion is denied.

                                                          **MARTIN C. ASHMAN**

Dated: April 18, 2006.                                  United States Magistrate Judge

Copies have been mailed to:

| | |
|---|---|
| FRANK J. ANDREOU, Esq. | RICHARD T. RYAN, Esq. |
| Andreou & Casson, Ltd. | MARK F. SMOLENS, Esq. |
| 332 South Michigan Avenue | Ryan, Smolens & Jones |
| Suite 1144 | 180 North LaSalle Street |
| Chicago, IL 60604 | Suite 2303 |
| | Chicago, IL 60601 |
| Attorneys for Plaintiffs | Attorneys for Defendants |